| | |
|---|---|
| BRADLEY E. EARP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 5:07cv-00031 |
| | ) |
| CHRISTOPHER ALLEN PETERS, | ) |
| | ) |
| Defendant and | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ERICA WAYNETTE HARRIS and the | ) |
| COUNTY OF ALEXANDER, | ) |
| | ) |
| Third-Party Defendants. | ) |

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR INDEPENDENT MEDICAL EXAMINATION OF PLAINTIFF, BRADLEY E. EARP

### NATURE OF THE CASE AND MATTER BEFORE THE COURT

This action was filed on the 13th day of February, 2007 in Alexander County Superior Court, and arises from a motor vehicle accident occurring on the 25th day of August, 2005 near Taylorsville, NC. The matter was moved to the Federal Court for the Western District of North Carolina by the Defendant, Christopher Allen Peters.

The Complaint alleges that the Defendant, Christopher Allen Peters, was negligent in the operation of his tractor-trailer on the day in question. The Defendant has denied that he was

1

negligent, and in his cross-claim has defended based upon claimed negligence of the driver of the ambulance in which the Plaintiff was a passenger and acting as supervisor of the ambulance driver on the day in question. The Defendant has asserted negligence of the ambulance driver and of the Plaintiff himself and the County of Alexander as employer of the Plaintiff and the ambulance driver in bar of recovery. The Plaintiff asserts substantial damages, including economic injuries, due to alleged claimed brain injury and permanent impairments.

Having returned to his original position as Director of the Alexander County EMS after convalescence from his injuries, the Plaintiff nonetheless claims economic injuries for permanent impairments because of an alleged brain injury and neuropsychological impairments, harm to his future earnings and claimed potential premature termination of his employment.

### DISCOVERY

Specifically related to his injuries, the Plaintiff, as part of its Rule 26 disclosure and in keeping with the Court's Pre-Trial Order, has served reports of its experts. The Plaintiff has been examined by a neuropsychologist, James D. Petrick, Ph.D. Dr. Petrick in turn requested examination of Mr. Earp by Samuel Mehr, M.D., of Omaha, NE, who is Board Certified in Nuclear Medicine, and who claims examination of the Plaintiff to reveal "non-specific abnormalities of the brain metabolism", supporting a clinical diagnosis of post-traumatic encephalopathy. This finding by Dr. Mehr is disputed by Defendant's expert T. Erik Borresen, M.D., whose report has been produced and served on the Plaintiff. (Report of radiological findings of Dr. Mehr, Plaintiff's Exhibit 7; Rule 26(a)(1 and 2) disclosures.) Dr. Borresen has directly disputed the finding of brain injury, and from his review of the record, including other brain radiological studies, has concluded the Plaintiff suffers no brain injury.

2

The Plaintiff caused a medical examination and evaluation of permanent impairment to be performed by William C. VanNess, III, M.D. on November 20, 2007. Dr. VanNess rated Mr. Earp's impairment using the N.C. Industrial Commission guidelines, and asserted a permanent impairment of 37.5%. He concluded that Mr. Earp qualified for continuing full unrestricted duties as a paramedic and recommended certain maintenance of home exercise and YMCA exercise programs, and further stated his opinion that recurrent sinusitis related to the facial and sinus fractures sustained by the Plaintiff in the accident could require future surgical intervention, and might require long-term ENT care. He stated that further the "jaw-related problems" were consistent with his injuries, and he might need oral surgery and implants. He further concluded that the Plaintiff should continue conservative pain control measures, including use of an electrical TENS, Tylenol and nonsteroidal inflammatory medications as needed. Dr. VanNess further concluded that the Defendant did not need to work with a pain specialist.

The Plaintiff additionally caused a work capacity evaluation to be performed by Leonard N. Matheson, Ph.D., who administered vocational aptitude testing on the Plaintiff. Dr. Matheson, in his vocational assessment, found that Mr. Earp returned to full employment at his prior salary. He reviewed the course of his intended plans for a career change. In summary, on the screening for competitive employment, Mr. Earp scored at the 83 percentile, and Dr. Matheson concluded that, "In terms of general problem solving ability, he would be able to pass a pre-employment screening test such as to qualify for most occupations that are in his academic background and work history would support." Dr. Matheson found, however, that Mr. Earp suffered from certain limitations in his logical reasoning and judgment, and scored a low category performance in administration of Watson Glaser Critical Thinking Appraisal, between the 25th and 45th percentiles. This could limit

3

his ability to perform executive-type jobs. With this information, coupled with other information, even with favorable results in regards to most of the vocational aptitude test administered by Dr. Matheson, Mr. Earp would have significant functional limitations, which "do not preclude his ability to maintain employment in his current job, they significantly impair his efficiency and productivity", and further concluded it limits his range of "alternative occupations" available to him. His report then states that these occupational disabilities result in a lifetime loss of earning capacity.

Separately, the Plaintiff has employed expert Michael L. Brookshire, who concluded that the present value of claimed future medical needs and loss of earning capacity are in excess of One Million Dollars ($1,000,000.00).

Christopher S. Delaney, M.D., CLCP, CWS, CDA received his medical degree in 1990 and is certified in the specialties of physical medicine and rehabilitation from the American Board of Physical Medicine and Rehabilitation, and further is a certified life care planner and disability analyst. Dr. Delaney reviewed the above reports and evaluations prepared by the Plaintiff, and testifies to the following observations and opinions in his Affidavit:

A.     The plaintiff has undergone an independent medical examination with provision of a disability rating using the North Carolina Industrial Commission Guidelines. Disability evaluations of this complexity are frequently conducted using the American Medical Associations Guides to the Evaluation of Permanent Impairment. Dr. Delaney is an expert in the use of this evaluation format, and it is believed that the use of this tool would allow a more precise quantification of any permanent partial disability and also confirm the accuracy and consistency of earlier evaluations.

4

B.     The plaintiff's future medical needs and costs have been estimated using a life care plan, but review of the life care plan reveals inconsistencies with what would be required based on a review of the medical records.  Costs appear inaccurate and there also appears to be the absence of medical basis which would come from the opinions of caregivers or qualified experts.  Thus, an independent medical examination by Dr. Delaney, a certified life care planner, would allow confirmation of future medical and other costs associated with the injuries.

C.     Review of the economic analysis describes vocational losses which appear not to be supported by the medical records.  Evaluation by Dr. Delaney, a certified disability analysis and expert in the vocational impact of disability, would allow confirmation of vocational limitations.

### ARGUMENT

Rule 35 of the Federal Rules of Civil Procedure provides that when a mental or physical condition of a party is in controversy, and upon a showing of good cause, the Court may order the party to submit to a physical or mental examination.  The granting of a Rule 35 motion rests in the sound discretion of the trial court.

The Federal decisions have found good cause is established when there is a showing that the Plaintiffs are (1) seeking substantial damages as a result of alleged specifically defined severe harm, see *Thiessen v. General Electric Capital Corporation, supra*, 178 F.R.D., at 570 (D. Kan. 1998) (the court found good cause where plaintiff had identified specific injuries); or (2) claiming injuries that are alleged to be continuing in nature, see *Jansen v. Packaging Corp. of America*, 158 F.R.D. 409, at 410 (1994) (the court found that good cause existed for the examination because the plaintiff contended that her harm was continuing into the present); or (3) where the plaintiff's injury is offered via opinions by their own expert testimony, see *Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D.

5

196, at 200, *affirmed*, 164 F.R.D. 204 (1995) (the court found that plaintiff's plans to prove his claim through the testimony of expert witnesses constituted good cause for granting defendant's Rule 35 motion); *Womack v. Stevens Transport, Inc.*, 205 F.R.D. 445, at 447 (E.D. Pa 2001) (where the court found good cause for the requested examination, concluding that, without the requested examination, defendants otherwise would be limited to cross-examining the evaluation of plaintiff's expert and that mere cross-examination of the plaintiff's expert was a "insufficient test of truth"). In particular, where there is a showing that the medical evidence is inadequate for the opposing party to evaluate the condition of the party, an examination pursuant to Rule 35 is appropriate. Each of these circumstances exists in this case.

Substantial damages are sought in this case that arise from a claimed brain injury and post-concussive syndrome. This has been specifically contended by Plaintiff's Neuropsychologist, Dr. Petrick.

The Plaintiff's experts, Drs. VanNess and Matheson, and his life care planner, Dr. Sciara, have alleged both permanent vocational disabilities for Mr. Earp and substantial continuing future medical expense. In this case, the damages are largely prospective, and they rely almost entirely on the opinions of the Plaintiff's experts, Dr. Petrick and Dr. VanNess, and conclusions drawn from those reports by Drs. Matheson and Sciara.

As the Affidavit of Dr. Delaney shows, there is evidence to believe that in the first instance the projected future medical expense projected by the Plaintiff is not supported by the medical records, and, in fact, is not supported by the Plaintiff's own medical experts. Further, as shown by the Affidavit of Dr. Delaney, there is a need for independent review of the extent of claimed disability and vocational impact of any disabilities on the Plaintiff. Dr. Delaney, as medical doctor,

6

has expert use of the AMA's Evaluation of Permanent Impairment tool, which would give the most accurate assessment of any permanent impairments to the Plaintiff.

Moreover, based upon the qualifications of Dr. Delaney as testified in his Affidavit and submitted with his Curriculum Vitae, it is clear that Dr. Delaney is well-qualified and an appropriate examiner in this case. Courts have consistently held that, absent a "valid objection" defendant may select the examiner of his choice. See *Douponce v. Drake*, 183 F.R.D. 565 (D. Colo. 1998) (the court allowed defendant's motion for a Rule 35 physical examination and choice of examiner, over plaintiff's objection and contention that the physician chosen by the defendant was biased because he had conducted multiple independent medical examinations for defense counsel and insurance companies and held that such contentions were relevant only as to weight and credibility which could be fully addressed by cross-examination); *Dasilva v. Gagliardo*, 17 Mass. L. Rep. 141 (Mass Super. 2003) (where the court held that while a defendant does not have an absolute right to choose its examining doctor, the defendant's choice should be respected in the absence of a valid objection). As stated by the court in *Powell v. United States*, 149 F.R.D. 122 (E.D. Va. 1993):

> The "valid objection" requirement provides defendants with the same opportunity as plaintiffs in choosing an expert witness. Defendants have absolutely no say in determining which physician a plaintiff chooses as a treating physician or as an expert witness; Likewise, a plaintiff should be limited in his ability to object to the selection of the defendant's expert witnesses.

*Powell*, 149 F.R.D. at 124.

Dr. Delaney is amply qualified to conduct the examination, and, indeed, his credentials are exactly suited to the examination needed in this case. Given his qualifications as a medical doctor and certifications in the field of disability analyst and life care planner.

7

Moreover, it is proposed that the examination be conducted at the Quality Inn & Suites located at 715 Sullivan Road, Statesville, North Carolina 28677, which is a relatively short drive (approximately 20 miles) from Mr. Earp's home in Alexander County. Dr. Delaney will undertake to schedule the examination on a date and time as workable within the Plaintiff's schedule as possible.

In this case, the examination outlined by Dr. Delaney is an appropriate method for obtaining the information sought, the means of doing so, and the examination of the Plaintiff is also appropriate and noninvasive.

**WHEREFORE**, the Defendant respectfully requests that the motion for an independent medical examination be granted to determine the extent of the disabilities of the Plaintiff, if any, and the life care needs of the Plaintiff, if any, and that Christopher S. Delaney, M.D., CLCP, CWS, CDA be appointed to conduct such an examination, and direct such examination to occur on or before June 30, 2008 at the Quality Inn & Suites located at 715 Sullivan Road, Statesville, North Carolina 28677 and that the Court grant such other and further relief as it may deem just and proper.

Respectfully submitted the 22nd day of May, 2008.

*/s/ Richard L. Robertson*
Richard L. Robertson
State Bar No. 8000
Richard L. Robertson & Associates, P.A.
*Attorney for the Defendant and Third-Party Plaintiff*
2730 East W.T. Harris Blvd., Suite 101
Charlotte, NC 28213-4108
Telephone: (704) 597-5774
Facsimile: (704) 599-5603

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the foregoing *Defendant's Brief in Support of Motion for Independent Medical Examination of the Plaintiff, Bradley E. Earp* in the foregoing civil action by electronic transmission and/or depositing same in the United States Mail, first class postage prepaid, addressed to the attorney of record as follows:

H. Kent Crowe
*Attorney for the Plaintiff*
Crowe & Davis, P.A.
P. O. Drawer 1509
Conover, NC 28613
Telephone: (828) 464-5205
Facsimile: (828) 464-7511
kcrowe@croweanddavis.com

Douglas A. Spencer
*Co-Counsel for Plaintiff*
Hill, Peterson, Carper, Bee & Deitzler, P.L.L.C.
500 Tracy Way
Charleston, WV 25311
Telephone (304) 345-5667
Facsimile: (304) 345-1519
doug@hpcbd.com

George H. Pender
*Attorney for Third-Party Defendants*
Teague, Campbell, Dennis & Gorham, L.L.P.
Post Office Box 19207
Raleigh, North Carolina 27619
Telephone: 919-873-0166
Facsimile: 919-873-1814
binman@tcdg.com

This the 22nd day of May, 2008.

*/s/ Richard L. Robertson*
Richard L. Robertson
*Attorney for Defendant and Third-Party Plaintiff*

9