IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO.: 5:07CV31

| | |
|---|---|
| BRADLEY E. EARP,<br>    Plaintiff<br><br>    v.<br><br>CHRISTOPHER ALLEN PETERS,<br>    Defendant and<br>    Third-Party Plaintiff<br><br>    v.<br><br>ERICA WAYNETTE HARRIS, and the<br>COUNTY OF ALEXANDER,<br><br>    Third-Party Defendants | **MEMORANDUM AND<br>ORDER** |

**THIS MATTER** is before the Court on Third-Party Defendants Erica Waynette Harris' and the County of Alexander's Motion To Dismiss the Third-Party Plaintiff Christopher Allen Peters' Third Party Complaint, filed April 23, 2007, for failure to state a claim upon which relief can be granted, and Third-Party Plaintiff's Response, filed May 4, 2007, with associated memoranda. (Documents #14, #15, #18, and #19.) The Third-Party Plaintiff's Third-Party Complaint was filed March 14, 2007. (Document #7.)

**I. Background & Procedural History**

Earp filed a personal injury complaint against Peters on February 13, 2007 in the North Carolina Superior Court for Alexander County. On March 14, 2007, Defendant

1

Peters filed for removal to the Western District of North Carolina. (Def.'s Notice of Removal, Doc. #1.) That same day, Defendant Peters filed an answer to Plaintiff Earp's complaint and included a Third-Party Complaint against Erica Waynette Harris and the County of Alexander. (Def.'s Answer & Third-Party Compl., Doc. #7.) On April 23, 2007, the Third-Party Defendants collectively filed a motion to dismiss Peters' claim. (Third-Party Defs.' Mot. Dismiss, Doc. #14.) This motion to dismiss is addressed herein.

Plaintiff Earp is a citizen and resident of Alexander County, North Carolina. (Def.'s Ans. & Third-Party Compl. at 2.) The Defendant Peters is a citizen and resident of Virginia. Id. at 8. On August 25, 2005 around 8:39 a.m., Peters was driving a truck towing a trailer. Id. Earp was a passenger in an emergency service vehicle owned by Alexander County. Id. Third-Party Defendant Harris was driving the emergency vehicle. Id. The two vehicles collided on the highway. Id. at 9. Plaintiff Earp was allegedly injured as a result of this collision. Id. Earp and Harris both work for the County of Alexander. Id. at 8.

The Parties' pleadings and memoranda reveal key factual and legal issues to be resolved. First, there is a question of whether there was negligence, and if so, who may have been negligent. Second, if individual parties were negligent, did their alleged conduct rise to the level of willful, wanton, and reckless negligence. Third, and more pertinent to the instant inquiry, the question must be answered whether the third-party complainant has sufficiently stated a claim.

## II. Standard Of Review / Fed. R. Civ. P. 12(b)(6)

In ruling on a Rule 12(b)(6) motion to dismiss, the Court must take the allegations in the complaint (here, third-party complaint) as true, and construe the facts alleged in the

2

complaint in the light most favorable to the non-moving party. *See* G.E. Investment Private Placement v. Parker, 247 F.3d 543, 548 (4th Cir. 2001). Dismissal may occur only if it appears beyond doubt that the non-moving party can prove no set of facts in support of its claim that would entitle the plaintiff to relief. Flood v. New Hanover County, 125 F.3d 249, 251 (4th Cir. 1997). There must be an "'insurmountable bar' to recovery" that appears on the face of the complaint. Cameron v. Merisel, 163 N.C. App. 224, 234, 593 S.E.2d 416, 424 (N.C. Ct. App. 2004) (citing Pastva v. Naegele Outdoor Advertising, 121 N.C. App. 656, 659, 468 S.E.2d 491, 493 (N.C. Ct. App. 1996)).[1]

### III. Workers' Compensation Law

**A. Generally**

The North Carolina Workers' Compensation Act (NCWCA) was created to "secure prompt and reasonable compensation for an employee." Thompson v. Virginia & Carolina Southern R. Co., 216 N.C. 554, 557, 6 S.E.2d 38, 40 (N.C. 1939). The NCWCA sought to preempt the question of negligence related to the employer. *See* Brown v. Motor Inns of Carolina, Inc., 47 N.C. App. 115, 118, 266 S.E.2d 848, 849 (N.C. Ct. App. 1980). Prompt and certain compensation to an employee injured on the job is provided in exchange for the employee's right to sue the employer. *See* Hicks v. Guilford County, 267 N.C. 364, 148 S.E.2d 240 (N.C. 1966); Cameron v. Merisel, 163 N.C. App. at 227, 593

---

[1] A court may consider documents outside of the pleadings so long as the documents are integral to the complaint, explicitly relied on in the complaint, and their authenticity is not challenged. *See* Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999); In re Cree, Inc. Securities Litigation, 333 F. Supp. 2d 461, 469 (M.D.N.C. 2004); Tatum v. R.J. Reynolds Tobacco Co., 294 F. Supp. 2d 776, 781 (M.D.N.C. 2003), rev'd on other grounds, 392 F.3d 636 (4th Cir. 2004). Although the term pleading can be defined broadly, the "main pleadings are the plaintiff's complaint and the defendant's answer." Black's Law Dictionary 1173 (7th ed. 1999).

S.E.2d at 420.  However, the NCWCA does not in all cases eliminate an employee's right to sue.

If an intentional tort is alleged, then the NCWCA does not shield an employer or co-employee from a civil suit.  *See* Woodson v. Rowland, 329 N.C. 330, 348, 407 S.E.2d 222, 233 (N.C. 1991); Cameron, 163 N.C. App. at 229, 593 S.E.2d at 421.  If an employee alleges mere negligence on the part of the employer or co-employee, then the NCWCA shields the employer and co-employee from civil suits.  If the allegations rise to the level of an intentional tort, then an employee can maintain a civil suit.  The employee must prove three elements to establish an intentional tort: (1) an intentional act by the employer; (2) an intentional injury to the employee; and (3) substantial certainty that the act would cause serious or deadly injury.  *See* Pleasant v. Johnson, 312 N.C. 710, 714-715, 325 S.E.2d 244, 248 (1985).

### B. Potential Defendants

#### 1. Co-employee

Pleasant held that the three elements required for an intentional tort can be established through "constructive intent" for a co-employee.  Pleasant, 312 N.C. at 715, 325 S.E.2d at 248. Constructive intent is established when a co-employee commits willful, wanton and reckless negligence. *See* id. at 716, 325 S.E. 2d at 249.  Thus, "[t]he NCWCA does not shield a co-employee from common law liability for willful, wanton and reckless negligence." Id.

### 2. Employer

Woodson held that the three elements required for an intentional tort can be established through "constructive intent" for an employer. Woodson, 329 N.C. at 340-341, 407 S.E.2d at 228. Constructive intent is established through willful, wanton, and reckless negligence by the employer. Id. "Such misconduct is tantamount to an intentional tort, and civil actions based thereon are not barred by the exclusivity provisions of the [NCWCA]." Id. at 341, 407 S.E.2d at 228.

A Woodson claim for constructive intent requires the injured party to prove: "(1) misconduct by the employer; (2) intentionally engaged in; (3) with the knowledge that the misconduct is substantially certain to cause serious injury . . . ; (4) and that the employee is injured as a consequence of the misconduct." Cameron v. Merisel, 163 N.C. App. at 229, 593 S.E.2d at 421 (citing Pastva, 121 N.C. App. at 659, 468 S.E.2d at 494 (N.C. Ct. App. 1996)).

The North Carolina Court of Appeals has focused on the "substantial certainty" part of Woodson claims. *See* Cameron, 163 N.C. App. at 230, 593 S.E.2d at 421; *see also* Wiggins v. Pelikan, Inc., 132 N.C. App. 752, 756, 513 S.E.2d 829, 832 (N.C. Ct. App. 1999). To determine whether a party was substantially certain to cause serious injury, "all of the facts taken together must be considered." Wiggins, 132 N.C. App. at 756, 513 S.E.2d at 832 (citing Regan v. Amerimark Bldg. Products, Inc., 118 N.C. App. 328, 331, 454 S.E.2d 849, 852 (N.C. Ct. App. 1995)). A few enumerated factors to consider are: whether the employer tried to remedy the problem; whether the employer offered training for safe behavior; whether there was a good faith attempt by the employer; and whether

the employer knew of safety precautions that the employer did not take. See Wiggins, 132 N.C. App. at 757, 513 S.E.2d at 833.

## V. Discussion

### A. Peters' Woodson Claim

#### 1. Misconduct By The Employer

Third-Party Defendant Harris' actions are attributed to her employer, the County of Alexander. See N.C. GEN. STAT. § 20-71.1. (Def.'s Ans. & Third-Party Compl. at 11.) Peters alleges that Harris, and thus the County of Alexander, was negligent in ten separate ways. Id. at 9-11. Harris failed to keep a proper lookout; yield the right of way; give a warning signal (i.e. lights and sirens); and reduce her speed, inter alia. Id. at 9-11. Each of these allegations represents misconduct that is attributed to the employer. Construing the facts in Third-Party Plaintiff Peters' favor, the facts can support a claim that the co-employee, Harris, and thus the employer, committed misconduct.

#### 2. Action Was Intentionally Engaged In By The Employer

Peters alleges that Harris operated a motor vehicle in a willfully reckless manner. Id. at 9-10. The specific allegation that Harris acted "willfully" suggests that Harris acted with definite intent. Id. at 9. Harris acted willfully in disregarding the "safety of others" and driving "without due caution." Id. Because an employee's actions can be attributed to the employer, Harris' actions are attributed to the County of Alexander. Thus, when Harris acts willfully, the County of Alexander acts willfully. Once again, the facts alleged can support a claim that both the co-employee and employer acted intentionally, given the case law and based on the allegations in the third-party complaint.

### 3. Employer Was Substantially Certain That Misconduct Would Result In Serious Injury

For substantial certainty, "all of the facts taken together must be considered." Wiggins, 132 N.C. App. at 756, 513 S.E.2d at 832. According to the Third-Party Defendants, the employer attempted to prevent misconduct from occurring by having Earp ride in the car with Harris. (Def.'s Ans. & Third-Party Compl. at 3.) Including Earp in the car as a one-on-one instructor tends to show that the County of Alexander was "offer[ing] training in . . . safe behavior," which would tend to reduce the risk. Wiggins, 132 N.C. App. at 758, 513 S.E.2d at 833. This can also be seen as the employer's "good faith attempt to remedy" any risk that would arise. Id.

The facts stated in the Third-Party Complaint are not so sparse in suggesting certainty of injury as to present an "insurmountable bar to recovery," keeping the case from going forward. Cameron, 163 N.C. App. at 234, 593 S.E.2d at 424. First, Harris was a "trainee-driver of an ambulance," without much experience.[2] (Def.'s Ans. & Third-Party Compl. at 8.) A driver in her position may require extra supervision from a one-on-one instructor, like Earp. The allegation that Harris did not have the lights or sirens on at the appropriate time suggests that multiple employees, Harris and Earp, were committing misconduct. These facts support a claim that the misconduct committed by either employee created a substantial certainty of serious injury, further validating Peters' claim.

---

[2] In Peters' response to the Third-Party Defendants's Motion to Dismiss, Peters states that this was Harris' "first day on the job." (Third-Party Pl.'s Mem. In Supp. Mot. Dismiss at 2.) It is alleged that Harris had received no specific training for the vehicle she was driving. Id.

Second, Harris was "in the process of performing emergency services." Id. at 2 (admitting to the facts stated in Plaintiff's Complaint). As an ambulance driver responding to a call, Harris and Earp were both likely to be concerned about a potential life at risk. This concern could lead to many of the acts that Peters alleges: failure to keep a proper lookout; failure to yield the right of way; failure to give a warning signal (i.e. lights and sirens); and failure to reduce her speed. (Def.'s Ans. & Third-Party Compl. at 9-11.) Having Harris drive under these circumstances is arguably not a "good faith attempt to remedy" potential risks. Wiggins, 132 N.C. App. at 758, 513 S.E.2d at 833. These facts can suggest willful neglect by the County of Alexander rather than a remedy or amelioration of risk. This willful neglect then could be viewed as leading to a substantial certainty that a serious injury would occur, further validating Peters' claim.

Third, Harris was driving at 8:40 a.m., pulling onto a state highway. (Def.'s Ans. & Compl., 8.) This time could be viewed as morning rush hour. This fact may further enhance the stress of Harris's situation. Rushing to save a life with potentially high traffic volume, Harris' acts can be viewed as substantially certain to cause serious injury, further validating Peters' claim.

Fourth, "feasible safety precautions that would have reduced the risk causing the harm" exist, but were not taken by the County of Alexander. Wiggins, 132 N.C. App. at 758, 513 S.E.2d at 833. The County of Alexander could have had a training program for its employees to work up to driving in response to emergency calls. The County of Alexander could have used a training vehicle or practiced mock emergency responses. These facts could suggest that placing Harris in this highly stressful situation without

8

appropriate training is misconduct by the County of Alexander. Further, placing Harris behind the wheel of a vehicle moving at high speeds creates a risk of serious injury. Combining the alleged misconduct with the risk of serious injury, a substantial certainty that serious injury would result existed is supported by the alleged facts of Earp.

### 4. Employee Was Injured Because Of Misconduct

Peters' Answer denies the specific injuries mentioned by Earp in the initial Complaint. (Def.'s Ans. & Third-Party Compl. at 2.) The alleged negligence of the Third-Party Defendants is identified as the "direct and proximate cause" of any alleged injuries sustained by Earp. Id. at 9. Thus, the fourth element is satisfied.

With all four elements being satisfied in terms of the allegations, a Woodson claim exists. Peters' express allegations that the Third-Party Defendants acted "carelessly and recklessly, in willful and wanton disregard of the rights and safety of others" suggests that the Third-Party Complaint reaches beyond mere negligence. Id. As long as the claim reaches beyond negligence for both Third-Party Defendants, which it does, Peters' complaint against them is valid for purposes of the motion at issue.

### B. Workers' Compensation Payments

A question arises whether workers' compensation payments have been made and accepted by the Plaintiff Earp. Id. at 6-7. This question is of no import in the current inquiry because Peters' allegations in the Third-Party Complaint suggest more than mere negligence. Id. at 9. Receipt of workers' compensation payments by Earp, while potentially relevant to set off, does not shield an employer or employee from a civil action for an intentional tort. See Woodson, 329 N.C. at 349, 407 S.E.2d at 233. With Peters'

Woodson claim established, the NCWCA's protection for employers is eliminated. This lack of protection carries over to co-employees as well. *See* Pleasant, 312 N.C. at 716, 325 S.E.2d at 249. Thus, regardless of Earp's acceptance of workers' compensation, Peters' Third-Party Complaint should not be dismissed at this stage in the litigation.

## IV. Order

**IT IS, THEREFORE, ORDERED** that Third-Party Defendants Harris and the County of Alexander's Motion to Dismiss is hereby **DENIED**. The issues raised by Third-Party Defendants Harris and the County of Alexander may be more appropriately dealt with through summary judgment. FED. R. CIV. P. 56.

Signed: July 2, 2008

Richard L. Voorhees
United States District Judge