# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL DOCKET NO.: 5:07CV31

| | |
|---|---|
| **BRADLEY E. EARP,** )<br>    **Plaintiff** )<br>)<br>v. )<br>)<br>**CHRISTOPHER ALLEN PETERS,** )<br>    **Defendant and** )<br>    **Third-Party Plaintiff** )<br>)<br>v. )<br>)<br>**ERICA WAYNETTE HARRIS, and the** )<br>**COUNTY OF ALEXANDER,** )<br>    **Third-Party Defendants** )<br>_____ ) | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Third-Party Defendants Erica Waynette Harris and the County of Alexander's Joint Motion for Summary Judgment. (Documents ##75,76) The Court denied Defendants' motion by oral order on June 16, 2010. Third-Party Defendants have since asked the Court to reconsider its decision. (Documents ##141,142) Alternatively, Third-Party Defendants seek permission from this district court to pursue an interlocutory appeal on the question of governmental immunity. *See* 28 U.S.C. §1292, Fed. R. Civ. P. 3, 5. Defendant / Third-Party Plaintiff Christopher Peters opposes both requests. (Documents #146) This three-year old civil action is currently scheduled for final pretrial conference and motions hearing on October 12, 2010, with a jury trial to commence October 13, 2010.

**I. Background & Procedural History[1]**

This civil action stems from a collision between an Alexander County ambulance driven by Erica Waynette Harris ("Harris") and a truck driven by Christopher Allen Peters ("Peters") that occurred on August 25, 2005, in Iredell County around 8:39 a.m. There were three passengers in the ambulance on the day of the collision, all Alexander County employees at the time: Erica Waynette Harris[2], Bradley E. Earp ("Earp"), and Charlie Dale Killian ("Killian"). The day of the wreck was Harris's second day of employment with Alexander County. Earp was the Director of Emergency Medical Services for Alexander County and Killian had been with Alexander County in emergency medical service for more than twenty-five years. (Killian Dep.at 7-8, 34)

Killian was seated up front with Harris and tasked with supervising her operation of the vehicle on behalf of the County. (Killian Dep.at 35; Earp Dep.at 111.) According to Killian, Earp told Harris she could drive the ambulance on the non-emergency call. However, the crew was redirected to an actual emergency call by another supervisor as it was leaving the facility. Harris reportedly volunteered to Killian and Earp that she had never driven under true emergency conditions before yet remained in the driver's seat. The ambulance driven by Harris and the truck driven by Peters collided in or around an intersection of Highway 64 and Old Mountain Road. Peters allegedly turned hard left and eventually came to a stop out of his lane of travel. Earp, who was

---

[1] While denial of Third Party Defendants' summary judgment motion is the only matter being reconsidered, the Court's denial of summary judgment was in response to cross-motions and partial motions. Thus, the Court's treatment of the facts for purposes of determining whether summary judgment is appropriate is the same as if only one party sought relief pursuant to Fed. R. Civ. P. 56. In evaluating the merits of each party's motion, the court views the facts in the light most favorable to the non-moving party. *See* Local 2-1971 of Pace Int'l Union v. Cooper, 364 F. Supp. 2d 546, 554 (W.D.N.C.2005). The following statement of facts, therefore, contains the undisputed facts and identifies disputed facts in accordance with evidence put forward by one party or the other.

[2] Harris is no longer employed with Alexander County.

seated in the rear of the ambulance, sustained a head injury as a result of the collision - the seriousness of which is disputed by the parties. Earp has already received a workers' compensation award as a result of his injuries.

On February 13, 2007, Earp brought a negligence action against Peters, in the North Carolina Superior Court for Alexander County. On March 14, 2007, Peters removed the action to the Western District of North Carolina and simultaneously filed an Answer to Plaintiff Earp's Complaint that also included a Third-Party Complaint against Erica Waynette Harris and the County of Alexander. (Documents ##1,7) Peters' Third-Party Complaint seeks indemnification and contribution from Third-Party Defendants based on alleged negligence by Harris, acting as an employee and agent of Alexander County at all relevant times, and acting within the scope and course of her agency and employment. (Def.'s Ans. & Third-Party Compl. ¶¶5,14.) Peters also asserts employer negligence by Alexander County as an affirmative defense pursuant to N.C.Gen.Stat. §97-10.2(e). (Def.'s Ans. & Third-Party Compl., Third Aff. Def. / Set Off at 6-7, Compl. ¶¶15,16)

On April 23, 2007, the Third-Party Defendants collectively filed a motion to dismiss Peters' Third-Party Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Third-Party Defendants alleged that the North Carolina Workers' Compensation Act ("NCWCA") shielded the County and its employees (co-employees of the injured party) from suit. The Rule 12 motion was denied because this Court determined that Harris's actions are imputed to the County and because the Third-Party Complaint

alleged facts that may ultimately support a finding of "willful, wanton, and reckless negligence," in which case Peters' claims would survive.³ (Document #39)

**II. Basis for Denial of Motion for Summary Judgment / Governmental Immunity As A Potential Bar To Recovery Against Third-Party Defendants Erica W. Harris & Alexander County**

Harris and Alexander County assert that governmental immunity serves as a complete bar to Peters' Third-Party Complaint.

**i. Applicability & Scope of Governmental Immunity**

Absent consent or waiver, both Third-Party Defendants, Harris and Alexander County, are immune from suit. The North Carolina Court of Appeals recently explained:

> "Under the doctrine of governmental immunity, a municipality is not liable for the torts of its officers and employees if the torts are committed while they are performing a governmental function[.]" Taylor v. Ashburn, 112 N.C.App. 604, 607, 436 S.E.2d 276, 278 (1993). " 'It is also well-settled that when an action is brought against individual officers in their official capacities the action is one against the [S]tate for the purposes of applying the doctrine of sovereign immunity.' " DeMurry v. N.C. Dept. of Corrections, 673 S.E.2d 374, 380 (2009) (quoting Whitaker v. Clark, 109 N.C.App. 379, 381-82, 427 S.E.2d 142, 143-44 (1993)).

Woodard v. Cleveland County, 2010 WL 520979 (N.C.App. 2010). The operation of an ambulance by a county government has been deemed a governmental function. *See* McIver v. Smith, 518 S.E.2d 522 (N.C. App.1998), rev. improvidently granted, 525 S.E.2d 524, 526 (1986) (deciding as

---

³ Peters expressly alleged that negligence of Harris is imputed to Plaintiff Earp "by reason of her conduct while in the course and scope of her employment and / or agency and / or control and supervision by the Plaintiff, by reason of the joint enterprise of the Plaintiff and the owner and operator of the motor vehicle." (Def.'s Ans. & Third-Party Compl. ¶4) Peters also alleged that the Third-Party Defendants acted "carelessly and recklessly, in willful and wanton disregard of the rights and safety of others." (Def.'s Ans. & Third-Party Compl. at 9.) Woodson v. Rowland, 407 S.E.2d 222, 223 (N.C. 1991).

a matter of first impression that county-operated ambulance services are entitled to governmental immunity in that the establishment of ambulance service is a government function that provides "for the common good of all without the element of ... pecuniary profit"). Consequently, the Court next considers whether any basis for waiver exists.

### ii. Waiver - N.C.Gen.Stat. §20-156

Peters contends that North Carolina General Statute Section 20-156 supersedes Third-Party Defendants' claim of governmental immunity. Section 20-156, entitled "Exceptions to the right-of-way rule," provides in pertinent part:

> (b) The driver of a vehicle upon the highway shall yield the right-of-way to ... public ... ambulances ... when the operators of said vehicles are giving a warning signal by appropriate light and by bell, siren or exhaust whistle audible under normal conditions from a distance not less than 1,000 feet. When appropriate warning signals are being given, as provided in this subsection, an emergency vehicle may proceed through an intersection or other place when the emergency vehicle is facing a stop sign, a yield sign, or a traffic light which is emitting a flashing strobe signal or a beam of steady or flashing red light. This provision shall not operate to relieve the driver of a public ambulance ... from ***the duty to drive with due regard*** for the safety of all persons using the highway, nor shall it protect the driver of any such vehicle ... from the consequence of any arbitrary exercise of such right-of-way.

N.C.Gen.Stat. 20-156(b) (*emphasis added*). Thus, the thrust of Section 20-156(b) is conditioned upon the emergency vehicle providing proper warning signals and the driver of the public ambulance "driv[ing] with due regard for the safety of all persons using the highway." Id.

Under Beckles-Palomares v. Logan, where a statute imposes an affirmative or positive duty upon a municipality for the sake of public welfare, "the doctrine of governmental immunity has no application to protect the entity from liability for a negligent breach of the statutory duties so imposed." Beckles-Palomares v. Logan, 688 S.E.2d 758, 763 (N.C.App. 2010) (statute imposing positive duty upon municipality to keep streets and sidewalks in proper repair, in a reasonably safe

condition, and free from unnecessary obstructions, created an exception to the doctrine that a municipality will have immunity from liability for negligence in the performance of a governmental function). The same reasoning applies here. The obvious purpose of §20-156 is to make clear that municipalities and their emergency personnel are expected to use "due care" in carrying out their duties. Further, the McIver decision, which held that ambulance services were within the governmental function category for purposes of immunity analysis, is not dispositive of this issue since it did not address Section 20-156 as a potential basis for waiver of sovereign immunity. The Court therefore finds that Alexander County and Harris are not protected by governmental immunity.[4] As to immunity, Third-Party Defendants' motion for summary judgment is denied.

### iii. The Exclusive Remedy Doctrine, N.C. GEN. STAT. §97-10.1[5]

---

[4] Another potential basis for finding waiver of governmental immunity is the County's purchase of automotive liability coverage. *See* N.C.GEN.STAT. §153A-435. Third-Party Defendants contend that such waiver is subject to the Policy's express exclusions from coverage, which reads:

> The parties to this Contract intend for no coverage to exist under this Contract as to any claim for which the Covered Person is protected by sovereign immunity and / or governmental immunity under North Carolina law.

(Stipulated Insurance Contract Section III p.2) Under North Carolina law, the purchase of liability insurance does not waive sovereign immunity where the policy expressly excludes coverage for a plaintiff's claim. *See* Patrick v. Wake County Dept. of Social Servs., 655 S.E.2d 920 (2008); Norton v. SMC Bldg. Inc., 577 S.E.2d 310 (2003). This exclusion may beg the question whether immunity applies. In other words, the prior question is whether immunity applies. We said no. So no immunity, no exclusion. In any event, the Court need not decide this issue in light of the analysis deeming §20-156 to have superseded governmental immunity.

[5] N.C.GEN.STAT. 97-10.1 reads:

> "If the employee and the employer are subject to and have complied with the provisions of this Article, then the rights and remedies herein granted to the employee ... ***shall exclude all other rights and remedies of the employee ... as against the employer at common law or otherwise on account of such injury*** ...."

N.C.GEN.STAT. § 97-10.1 (*emphasis added*).

"The North Carolina Workers' Compensation Act [NCWCA] provides the sole remedy for an employee who has been injured by the *ordinary negligence* of a co-employee." Pleasant v. Johnson, 325 S.E.2d 244, 241 (N.C. 1985) (*emphasis added*). The Court found earlier that Earp's worker's compensation claim did not serve as a complete bar to Peters' Third-Party Complaint against Alexander County (Earp's employer) and Harris (then Earp's co-employee). The undersigned reasoned that because Peters alleged facts that could entitle him to relief based upon conduct tantamount to an intentional tort, the North Carolina Worker's Compensation Act ("NCWCA") did not shield Third-Party Defendants Alexander County and Harris from suit. (7/2/08 M&O at 4-5.) Finally, it was suggested that summary judgment disposition might be more appropriate.

For this reason, the Court's earlier analysis did not squarely address all of the legal issues advanced by the Third-Party Defendants.[6] In Hunsucker v. High Point Bending & Chair Co., the North Carolina Supreme Court explained:

> Since [the NCWCA] relieves the employer of liability to his injured employee as a tort-feasor, the [NCWCA] abrogates both the statutory right of a negligent third party to claim contribution from a negligent employer in equal fault and the common law right of a passively negligent third party to demand indemnity from an actively negligent employer.

75 S.E.2d 768, 776 (N.C. 1953); see also Lovette v. Lloyd, 73 S.E.2d 886 (1953). Nonetheless, the employer's protection is not absolute as made clear in North Carolina jurisprudence applying the NCWCA.

---

[6] In response to the parties' filings, the 2008 Memorandum and Order addressed the exclusive remedy doctrine generally (*i.e.*, what would be required for an employee to plead successfully a claim against an employer and co-employee) but did not consider specifically how the doctrine affected the Third-Party Plaintiff Peters' claims against Alexander County and Erica Harris for contribution and indemnification.

Third-Party Defendants now contend that no exception to the exclusive remedy doctrine can be established. In other words, Third-Party Defendants argue that, as a matter of law, the record evidence fails to establish a Woodson exception.[7] This contention will be taken up in Section III, *infra*.

### iv. The NCWCA Provides For An Employer's Contribution / Indemnification, N.C. GEN. STAT. § 97-10.2

For purposes of clarification, Section 97-10.2 sets forth the respective rights and interests of the employee-beneficiary, the employer, and the employer's insurance carrier in relation to any recovery obtained as a result of a common-law cause of action against a third party. *See* N.C. GEN. STAT. §97-10.2(a). As an initial matter, §97-10.2(a) makes clear that an employee's right to benefits under the NCWCA "shall not be affected by the fact that the injury ... was caused under circumstances creating a liability in some person other than the employer ...." Id.

In addition, the NCWCA contemplates circumstances where further actions against the employer might occur.[8] In fact, Section 97-10.2(e) creates a procedural right to contribution and indemnity ***notwithstanding a finding by the Court that the NCWCA bars any direct action against the employer***. Section 97-10.2(e) provides in pertinent part:

> If the third party defending such proceeding by answer duly served on the employer, sufficiently alleges that actionable negligence of the employer joined and

---

[7] It's undisputed that no special relationship – contractual or otherwise – existed between the parties such that any other exception to the exclusive remedy doctrine would be triggered. *See e.g.,* Carolina Power & Light Co., 144 S.E.2d 393 (N.C. 1965) (discussing third-party implications in context of indemnity agreement). Thus, the NCWCA serves as a bar to Third-Party Plaintiff's recovery or offset from Alexander County in the absence of evidence to support a Woodson theory.

[8] Third-Party Plaintiff Peters pointed out in the briefing on Alexander County's motion to dismiss that the Third-Party Defendants failed to explain to the Court the entire statutory scheme of the NCWCA, namely, the procedural protections contained within §97-10.2 such as the right of a third-party or an employee to seek contribution and indemnity against the employer.

> concurred with the negligence of the third party in producing the injury ..., then an issue shall be submitted to the jury in such case as to whether actionable negligence of employer joined and concurred with the negligence of the third party in producing the injury .... The employer shall have the right to appear, to be represented, to introduce evidence, to cross-examine adverse witnesses, and to argue to the jury as to this issue as fully as though he were a party although not named or joined as a party to the proceeding. Such issue shall be the last of the issues submitted to the jury. If the verdict shall be that actionable negligence of the employer did join and concur with that of the third party in producing the injury ..., then the court shall reduce the damages awarded by the jury against the third party by the amount which the employer would otherwise be entitled to receive therefrom by way of subrogation hereunder and the entire amount recovered, after such reduction, shall belong to the employee ...free of any claim by the employer and the third party shall have no further right of way of contribution or otherwise against the employer, except any right which may exist by reason of an express contract of indemnity between the employer and the third party ....

Carolina Power & Light Co., 144 S.E.2d 393 (N.C. 1965). In sum, Section 97-10.2 allows Peters, as a defendant being sued by a plaintiff who has received workers' compensation benefits, to 1) allege that Alexander County's negligence concurred in producing Earp's injuries; and 2) seek a reduction in damages as provided by the Workers' Compensation statutes. *See* Jackson v. Hall Motor Freight, Inc., 485 S.E.2d 895 (1997).

Alexander County has already paid $97,067.11 in workers' compensation benefits. As a result, the $97,067.11 figure represents the amount of the statutory workers' compensation subrogation lien the County has on any monetary award recovered by Earp. See N.C. Gen. Stat. §97-10.2(e)-(j). Therefore, as a practical matter, Peters is entitled to have a potential verdict against him reduced by $97.067.11 if a jury determines that Alexander County's negligence joined or concurred with Peters' negligence. (Third Party Defs.' Exh. A to MSJ) Peters' Third-Party claim against Third-Party Defendants thus survives the motion for summary judgment to this extent.

### III. Motion to Reconsider / FED. R.CIV.P. 59(e) and 60(b)[9]

Upon reconsideration, the Court finds that Peters' claims for contribution and indemnification pursuant to Woodson do not survive summary judgment.[10]

Here, the relevant exception to the exclusive remedy doctrine requires proof of intentional misconduct by Alexander County or Harris. As explained earlier in the litigation, in order to establish an intentional tort by way of constructive intent, Peters must present evidence sufficient to create a genuine issue of fact regarding (i) Third-Party Defendants' willful, wanton and reckless conduct; or (ii) Third-Party Defendants' knowledge that the challenged conduct was "substantially certain" to cause serious injury consistent with Woodson.[11] *See* Pleasant v. Johnson, 325 S.E.2d 244,

---

[9] Rule 59(e) of the Federal Rules of Civil Procedure provides for the alteration or amendment of a judgment where the party submits a motion "no later than 28 days after the entry of the judgment." FED. R. CIV. P. 59(e). "A Rule 59(e) motion is discretionary. It need not be granted unless the district court finds that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice." Robinson v. Wix Filtration Corp., 599 F.3d 403, 410-11 (4th Cir. 2010). Rule 60(b) authorizes a court, in its discretion, to grant a party relief from a final order based upon mistake, inadvertence, or any other reason that justifies relief. *See* FED. R. CIV. P. 60(b)(1) and (6). The Court applies the Rule 59(e) standard only since Third-Party Defendants' motion was timely filed. *See* Robinson, 599 F.3d at 412 ("[A] motion filed under both Rule 59(e) and Rule 60(b) should be analyzed only under Rule 59(e) if it was filed no later than 10 days after entry of the adverse judgment and seeks to correct that judgment") (applying previous version of Rule 59(e) with a 10 day limitations period).

[10] Earlier in these proceedings, Third-Party Defendants posited that Woodson was irrelevant in light of the facts alleged. (Third-Party Defs.' Mem. in Supp. MTD at 3 n.1) Consequently, the Court did not have the benefit of any detailed analysis from Third-Party Defendants on Woodson or its applicability.

[11] A Woodson claim for constructive intent requires the injured party to prove: "(1) misconduct by the employer; (2) intentionally engaged in; (3) with the knowledge that the misconduct is substantially certain to cause serious injury . . . ; (4) and that the employee is injured as a consequence of the misconduct." Cameron v. Merisel, 163 N.C. App. at 229, 593 S.E.2d at 421 (*citing* Pastva, 121 N.C. App. at 659, 468 S.E.2d at 494 (N.C. Ct. App. 1996)); *see also* Whitaker v. Town of Scotland Neck, 597 S.E.2d 665, 667-68 (N.C. 2003).

248 (N.C. 1985) (civil action against co-employee permitted); Woodson v. Rowland, 407 S.E.2d 222, 233 (N.C. 1991) (expanding Pleasant v. Johnson exception and permitting civil action against employer).

Applying Woodson in the instant third-party framework, the Court effectively places Peters in the shoes of the employee since it is the employer-employee relationship that places Peters' statutory right of contribution in jeopardy. *See* Lovette v. Lloyd, 73 S.E.2d at 892. Lovette explains the relationships this way:

> Section 97-10 grants to the employer in express terms complete relief from any and all other liability to his employee at common law or otherwise. This statutory provision abrogates all liability of the employer to the employee as a tort-feasor under the law of negligence for an injury by accident in the employment. In consequence, the third party, who is sued for damages for negligently inflicting a compensable injury upon the employee, cannot hold the employer liable for contribution under the statute embodied in G.S. §1-240 or for indemnity under the doctrine of primary and secondary liability even where the injury is the result of the joint or concurrent negligence of the employer and the third person. ***This is necessarily so for the very simple reason that one party cannot invoke either the statutory right of contribution or the doctrine of primary and secondary liability against another party in a tort action unless both parties are liable to the plaintiff in such action as joint tort-feasors....***

Lovette, 73 S.E.2d 886 (*internal citations omitted*).

Having now reconsidered Third-Party Defendants' legal argument in support of summary judgment, the Court finds that the record evidence here does ***not*** give rise to a genuine issue of material fact with respect to the type of egregious conduct required to establish an exception under Woodson. The North Carolina Supreme Court has construed the Woodson exception narrowly. *See* Whitaker v. Town of Scotland Neck, 597 S.E.2d 665, 668 (2003) (Woodson exception represents "a narrow holding in a fact-specific case"); Richmond v. Indalex, Inc., 308 F.Supp.2d 648, 665 (M.D.N.C. 2004) (state courts have created an "extremely demanding standard" for plaintiffs

bringing Woodson claims).  Although the conduct at issue may be fairly characterized as "risky," Peters fails to present evidence tending to show that Alexander County could have been "substantially certain" that serious injury would result if Harris was permitted to drive the ambulance in emergency conditions.  As the North Carolina Supreme Court emphasized in Whitaker, no genuine issue of material fact existed for purposes of the Woodson exception where it may have been probable, or even substantially probable, that the employer's misconduct would result in serious injury or death. *See also* Richmond, 308 F.Supp.2d at 670 (*quoting* Jones v. Williamette Indus., Inc., 463 S.E.2d 294 (1995)) ("[w]hile much more might have been done to ensure workers' safety, the evidence does not show that [the employer] engaged in misconduct *knowing* it was substantially certain to cause death or serious injury.")  In fact, based on Woodson and its progeny, an argument could be made that there could be no liability under Woodson against an employer that had not already benefitted from a specific warning that the exact circumstances (with no intervening random acts) might occur in the future and result in serious injury or death if not remedied.

In the instant case, there's no evidence indicating that the third-party ride along practice was dangerous in any way or that the County had any legitimate reason to believe that Harris's driving was generally unsafe.  In addition, there's nothing in the record indicating that Alexander County had been subject to any disciplinary actions or received citations from an OSHA-like regulating authority due to pertinent prior safety violations. Richmond, 308 F.Supp.2d at 668; Rose v. Isenhour Brick & Tile Co., 472 S.E.2d 774, 778 (1996); Regan v. Amerimark Bldg. Prods., Inc., 489 S.E.2d 421 (N.C.App. 1997).  At best, the record supports a finding of ordinary negligence on the part of Third-Party Defendants. *See e.g.*, Richmond, 308 F.Supp.2d at 667 (contrasting facts with Woodson and granting summary judgment in favor of defendant-employer);  Barrino v. Radiator Specialty

Co., 317 S.E.2d 51, 52 (N.C.App.1984) (affirming trial court's grant of summary judgment in favor of defendant-employer where allegations of misconduct, which may demonstrate gross negligence, failed to establish an intentional act sufficient to remove the protection afforded defendant by §97-10.1); Abernathy v. Consol. Freightways Corp. of Delaware, 362 S.E.2d 559 (N.C. 1987) (following jury trial, NCWCA held to be the exclusive remedy for employee plaintiff in action against co-employee and employer alleging willful, wanton and reckless conduct).

## IV. Order

**IT IS, THEREFORE, ORDERED THAT:**

1) Third-Party Defendants' Motion for Reconsideration is **GRANTED in part** and **DENIED in part**;

2) Third-Party Defendants' Motion for Summary Judgment is **GRANTED** as to the Woodson claim;

3) Third-Party Defendants' Motion for Summary Judgment is **DENIED** with respect to statutory contribution and indemnification claims pursuant to N.C. GEN. STAT. §97-10; and

4) Third-Party Defendants' Alternative Motion for Certification of Appeal pursuant to 28 U.S.C. §1292(b) is **DENIED** as the Court does not find that a substantial ground for difference of opinion exists regarding the applicability of governmental immunity.

Signed: September 30, 2010

Richard L. Voorhees
United States District Judge